UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| JAMES EZELL, JR. | CIVIL ACTION |
| VERSUS | NO. 23-2599 |
| UNDERWRITERS AT LLOYD'S, LONDON | SECTION M (2) |

## ORDER & REASONS

Before the Court is a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure filed by defendant Certain Underwriters at Lloyd's London subscribing to policy number VBRT729551 ("Certain Underwriters"), incorrectly named as "Underwriters at Lloyd's, London."[1] Plaintiff James Ezell, Jr. ("Ezell") responds in opposition,[2] and Certain Underwriters replies in further support of its motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting the motion because diversity jurisdiction is lacking.

### I.   BACKGROUND

This case involves an insurance coverage dispute following Hurricane Ida, which made landfall on August 29, 2021.[4] Ezell, a citizen of Louisiana, owns a home in Kenner, Louisiana, that was covered by a homeowners insurance policy issued by Certain Underwriters.[5] Ezell asserts that he made a claim with Certain Underwriters and that it has failed to timely and adequately adjust the claim.[6] Thus, Ezell filed suit in this Court seeking coverage under the policy and

---

[1] R. Doc. 6.
[2] R. Doc. 10.
[3] R. Doc. 17.
[4] R. Doc. 1 at 3.
[5] *Id.* at 2.
[6] *Id.* at 3.

bringing claims for breach of contract and bad faith.[7] In his complaint, he asserts diversity subject-matter jurisdiction under 28 U.S.C. § 1332, alleging that Certain Underwriters is a corporation that is both incorporated, and maintains its principal place of business, in New York.[8]

## II.     PENDING MOTION

Certain Underwriters moves to dismiss for lack of subject-matter jurisdiction, arguing that the $75,000 amount-in-controversy requirement must be satisfied as to *each* syndicate subscribing to the policy and that Ezell has failed to make this showing.[9] According to Certain Underwriters, there are seven syndicates subscribed to the policy with one syndicate assuming only 2.7% of the total risk.[10] Thus, Certain Underwriters argues that even if that syndicate has only one "name" or member, Ezell would have to establish total damages of at least $2,777,777 in order for that syndicate to be held liable for $75,000.[11]

In opposition, Ezell argues that he filed a single claim against a single defendant, Certain Underwriters.[12] Alternatively, Ezell argues that the $75,000 jurisdictional threshold is met as to

---

[7] *Id.* at 4.
[8] *Id.* at 1-2.
[9] R. Doc. 6-1 at 8-10. Certain Underwriters also argues that its citizenship for the purposes of diversity jurisdiction is determined by the citizenship of each "name" subscribing to the policy at issue, and "avers" that one of the names subscribing to the policy at issue is a citizen of Louisiana, as is plaintiff. *Id.* at 5-8. However, because Certain Underwriters did not identify the Louisiana "name" – but instead merely claims, without any proof, that "at least one of the subscribing syndicates to Policy No. VBRT729551, BRIT (BRT) 2988 is not diverse to Plaintiff" since it is a "citizen of Louisiana" – Ezell sought limited jurisdictional discovery concerning the identities and citizenships of the names. R. Doc. 10. The Court ordered Certain Underwriters to provide to Ezell proof of citizenship of the purportedly nondiverse name and that the parties engage in limited jurisdictional discovery. R. Doc. 14. The Court also ordered Ezell to file into the record the proof of citizenship of the purportedly nondiverse name by October 11, 2023. R. Doc. 20. On October 11, the Court granted a motion for extension filed by Ezell, extending the jurisdictional discovery period through November 8, 2023, and continuing the filing deadline to November 13, 2023. R. Doc. 20. The Court ordered that Certain Underwriters provide to Ezell by October 18, 2023, the identity and proof of citizenship of the purported Louisiana citizen subscribing as a "name" to the policy at issue, stating that the failure to provide plaintiff with such information by October 18, 2023, would be deemed by the Court as an admission that no name subscribing to the policy is a Louisiana citizen. *Id.* Certain Underwriters did not provide Ezell with this information by October 18, so Ezell filed a motion to enforce the Court's October 11, 2023 order, asking the Court to deny the motion to dismiss. R. Doc. 21. Because the Court finds that it lacks jurisdiction over this matter since Ezell fails to satisfy the amount-in-controversy requirement, the Court need not address his motion to enforce.
[10] R. Doc. 6-1 at 9.
[11] *Id.* at 9-10.
[12] R. Doc. 10 at 6.

2

at least one of the syndicates – namely BRT 2987, which assumed 50% of the total risk – and that the Court should exercise supplemental jurisdiction over the claims against the remaining syndicates pursuant to 28 U.S.C. § 1367.[13]

In reply, Certain Underwriters reiterates that Ezell must affirmatively allege the citizenship of each name under the policy.[14] It further argues that the Court may not exercise supplemental jurisdiction over six of the syndicates merely because the amount-in-controversy requirement is met as to one syndicate, positing that Fifth Circuit case law prohibits the aggregation of claims against the individual "names."[15]

## III. LAW & ANALYSIS

### A. Rule 12(b)(1) Standard

Rule 12(b)(1) of the Federal Rules of Civil Procedure permits a party to challenge a court's subject-matter jurisdiction. "[A] claim is properly dismissed for lack of subject-matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the claim." *Griener v. United States*, 900 F.3d 700, 703 (5th Cir. 2018) (quotation omitted). The party asserting jurisdiction bears the burden of proving that subject-matter jurisdiction exists. *Id.* "Lack of subject matter jurisdiction may be found in any one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint

---

[13] *Id.* at 6-7; *see also* R. Doc. 26 at 2-3 (attempting to distinguish cases cited by defendant for the proposition that supplemental jurisdiction cannot be asserted and stating that "[b]ecause there is no on-point authority to the contrary, the Court should follow the plain language of § 1367 and the Supreme Court's opinion in *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, [545 U.S. 546 (2005),] and find the amount in controversy is met here").

[14] R. Doc. 17 at 8. In making this argument, Certain Underwriters manifests a certain amount of unwarranted moxie, given that it has frustrated Ezell's effort to discover the citizenship of the "name" it claims to be a Louisiana citizen by refusing to provide this information – even in the face of the Court's order to do so. Consequently, the Court does not recognize Certain Underwriters' claim of Louisiana citizenship for this name, but, nonetheless, because the Court's handling of the amount-in-controversy issue is outcome determinative, this action does not alter the disposition of the subject motion.

[15] *Id.* at 8-9; R. Doc. 22 at 2-7 (citing, *inter alia*, *Team One Props., LLC v. Certain Underwriters at Lloyd's London*, 281 F. App'x 323, at *1 (5th Cir. 2008), and *Rips, LLC v. Underwriters at Lloyd's London*, 2015 WL 2452339, at *2-3 (E.D. La. May 21, 2015)).

supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "A motion to dismiss for lack of subject-matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claims entitling him to relief." *Sureshot Golf Ventures, Inc. v. Topgolf Int'l, Inc.*, 754 F. App'x 235, 239 (5th Cir. 2018).

### B. Analysis

The Lloyd's of London insurance market "creates a jurisdictional conundrum for federal courts sitting in diversity." *Louisiana Rest. Ass'n, Inc. v. Certain Underwriters at Lloyds, London*, 573 F. Supp. 3d 1054, 1058 (E.D. La. 2021). As explained by the Fifth Circuit:

> Lloyds of London is not an insurance company but rather a self-regulating entity which operates and controls an insurance market. The Lloyd's entity provides a market for the buying and selling of insurance risk among its members who collectively make up Lloyd's. Thus, a policyholder insures *at* Lloyd's but not *with* Lloyd's.
>
> The members or investors who collectively make up Lloyd's are called "Names" and they are the individuals and corporations who finance the insurance market and ultimately insure risks. Names are underwriters of Lloyd's insurance and they invest in a percentage of the policy risk in the hope of making return on their investment. … Each Name is exposed to unlimited personal liability for his proportionate share of the loss on a particular policy that the Name has subscribed to as an underwriter. Typically hundreds of Names will subscribe to a single policy, and the liability among the Names is several, not joint.
>
> Most Names or investors do not actively participate in the insurance market on a day to day basis. Rather, the business of insuring risk at Lloyd's is carried on by groups of Names called "Syndicates." In order to increase the efficiency of underwriting risks, a group of Names will, for a given operating year, form a "Syndicate" which will in turn subscribe to policies on behalf of all Names in the Syndicate. … A Syndicate bears no liability for the risk on a Lloyd's policy. Rather, all liability is born[e] by the individual Names who belong to the various Syndicates that have subscribed to a policy.
>
> ….
>
> In sum, while an insured receives a Lloyd's "policy" of insurance, what he has in fact received are numerous contractual commitments from each Name who has

> agreed to subscribe to the risk. The Names are jointly and severally obligated to the insured for the percentage of the risk each has agreed to assume.

*Corfield v. Dall. Glen Hills LP*, 355 F.3d 853, 857-59 (5th Cir. 2003) (internal citations omitted; emphasis in original).

The issues here are whether each name subscribing to a Lloyd's policy must meet the $75,000 amount-in-controversy requirement set out in 28 U.S.C. § 1332(a), but, even if so, whether the fact that the jurisdictional threshold is met as to one name allows the Court to exercise supplemental jurisdiction over the claims against the other names.

1. **Amount in Controversy**

A federal district court has original jurisdiction over civil actions where there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). As to the amount in controversy, it is well-established that "'where a suit is brought against several defendants asserting claims against each of them which are separate and distinct, the test of jurisdiction is the amount of each claim, and not their aggregate.'" *Jewell v. Grain Dealers Mut. Ins. Co.*, 290 F.2d 11, 13 (5th Cir. 1961) (quoting *Cornell v. Mabe*, 206 F.2d 514, 516 (5th Cir. 1953)). Therefore, a single plaintiff suing multiple, severally liable defendants may not aggregate the amounts in controversy against each defendant in order to satisfy the jurisdictional threshold of § 1332(a). *Cronin v. State Farm Lloyds*, 2008 WL 4649653, at *5 (S.D. Tex. Oct. 10, 2008).

Courts within the Fifth Circuit have routinely held, regarding Lloyd's polices, that the amount in controversy must be met as to each name. *See, e.g.*, *Rips*, 2015 WL 2452339, at *2 ("[A] number of cases from this Court as well as a Fifth Circuit opinion affirm Lloyd's assertion that the $75,000 minimum must be met against each individual Name. … [T]he Court finds that [the plaintiff] may not aggregate its claims against individual Names, and therefore must plead

that the $75,000 jurisdictional amount is met for *each* Name.") (emphasis in original); *Team One Props., LLC v. Certain Underwriters at Lloyd's*, *London*, 2007 WL 4365392, at *4 (E.D. La. Dec. 10, 2007) ("[I]t is inconceivable that the jurisdictional minimum could be satisfied against the more than 4,000 Names that have underwritten the policy in question. Therefore, [the plaintiff] has not established by a preponderance of the evidence that the jurisdictional minimum was in controversy as required by the Fifth Circuit."), *aff'd*, 281 F. App'x 323 (5th Cir. 2008); *McAuslin v. Grinnell Corp.*, 2000 WL 1059850, at *4 (E.D. La. Aug. 1, 2000) ("[B]ecause all but one of the Names lack the requisite amount in controversy, the Court finds that it does not have jurisdiction over this case in its present posture."); *Baldwin v. Certain Underwriters Lloyds London*, 2023 WL 6466197, at *3 (M.D. La. Oct. 4, 2023) ("Accordingly, to establish diversity subject matter jurisdiction in this case, Plaintiff must also plead that the amount in controversy is met as to each Name identified, if possible."); *Harrington v. Underwriters at Lloyd's London*, 2023 WL 7930209, at *3 (W.D. La. Nov. 16, 2023) ("Based on the jurisprudence, the Court must find that Harrington has not met his burden of alleging the $75,000.00 jurisdictional minimum required by 28 U.S.C. § 1332(a) against each member/Name subscribing to his policy."). These holdings are consistent with the "majority view" that the citizenship of each name must be considered in determining diversity subject-matter jurisdiction. *See Louisiana Rest.*, 573 F. Supp. 3d at 1060. Accordingly, the $75,000 jurisdictional threshold must be met for the claims against each name.

Here, Ezell cannot establish that the amount in controversy is met as to each name. Because one of the syndicates assumed only 2.7% of the total risk, even if that syndicate was made up of only one name, Ezell would have to be claiming at least $2,777,777 in total damages in order for that syndicate to satisfy the $75,000 threshold. While Ezell does not state in his complaint the exact amount of damages he seeks, he did send a demand letter to Certain Underwriters nine days

6

before filing his complaint requesting immediate payment of $255,095.90 for contractual damages, bad faith penalties, and attorney's fees – the same damages sought in his complaint.[16] "The amount of a settlement offer is 'valuable evidence to indicate the amount in controversy at the time [federal subject-matter jurisdiction is invoked].'" *Watts v. Harrison*, 2017 WL 4992677, at *3 (E.D. La. Nov. 2, 2017) (quoting *Fairchild v. State Farm Mut. Auto. Ins. Co.*, 907 F. Supp. 969, 971 (M.D. La. 1995)); *see Wilson v. Belin*, 20 F.3d 644, 651 n.8 (5th Cir. 1994); *Hodges v. ASI Lloyds*, 2017 WL 2472603, at *7 (M.D. La. May 22, 2017) (concluding that the defendants did not show "by a preponderance of evidence that the amount in controversy exceed[ed] $75,000," where they offered to settle the case for $53,567 before removal), *adopted*, 2017 WL 2468791 (M.D. La. June 7, 2017). Thus, because 2.7% of $255,095.90 is only $6,887.59, Ezell is unable to establish the requisite amount in controversy as to each name, and the Court lacks subject-matter jurisdiction over this matter unless it can exercise supplemental jurisdiction.

### 2. Supplemental Jurisdiction

A federal district court in a civil action is empowered to exercise supplemental jurisdiction over certain related claims. 28 U.S.C. § 1367. Specifically, § 1367(a) provides:

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

"Once the court determines it has original jurisdiction over the civil action, it can turn to the question whether it has a constitutional and statutory basis for exercising supplemental jurisdiction over other claims in the action." *Exxon Mobil*, 545 U.S. at 559. "'Supplemental jurisdiction does

---

[16] R. Doc. 6-4 at 4.

not – and cannot – operate to get a *case* into federal court.  Rather, it becomes relevant only after a case has invoked an independent basis of federal subject matter jurisdiction.'" *Forrest v. Nat'l Cas. Ins.*, 2018 WL 4512169, at *2 (M.D. La. May 22, 2018) (quoting 13D CHARLES A. WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3567 (3d ed. 2019)) (alteration omitted; emphasis in original).

In this matter, Ezell is not attempting to aggregate the amounts in controversy against each defendant to satisfy the statutory minimum.  Instead, Ezell claims that the Court has jurisdiction over his claims against one syndicate, BRT 2987, which assumed 50% of the total risk,[17] and that the Court should exercise supplemental jurisdiction over his claims against the other six syndicates.  However, in a diversity action, "pursuant to 28 U.S.C. § 1367(b), the court cannot exercise supplemental jurisdiction over codefendants; … each defendant must meet the amount in controversy requirement on its own without consideration of the other."  *Gines v. D.R. Horton, Inc.*, 2009 WL 1916485, at *4 (M.D. La. June 30, 2009); *see Samargandi v. Am. Express*, 2011 WL 221868, at *5 (S.D. Tex. Jan. 20, 2011) ("A court cannot 'exercise supplemental jurisdiction over defendants if the claims against them do not meet the minimum amount in controversy.'" (quoting *Cronin*, 2008 WL 4649653, at *5)); *Payton v. Nat'l Cont'l Ins. Co.*, 2023 WL 3815288, at *3 n.41 (E.D. La. June 5, 2023) ("'Even if the requirements for diversity jurisdiction are met for a claim against one defendant, the district courts may not exercise supplemental jurisdiction as to claims against different defendants, when such claims do not meet the requisite amount in controversy.'" (quoting *State Farm Mut. Auto. Ins. Co. v. Greater Chiropractic Ctr. Corp.*, 393 F. Supp. 2d 1317, 1323 (M.D. Fla. 2005))).

---

[17] Ezell thus claims that the amount-in-controversy requirement as to BRT 2987 is satisfied because 50% of $255,095.90 exceeds $75,000.  R. Doc. 10 at 7.

Moreover, the argument raised by Ezell was recently rejected by another section of this court in *Akers v. Certain Underwriters at Lloyds, London*, 2023 WL 8021827 (E.D. La. Nov. 20, 2023). In that case, a plaintiff brought suit in federal court against Lloyd's underwriters, and the underwriters moved to dismiss the case for lack of diversity jurisdiction. The court granted the motion, rejecting the plaintiff's argument that since her claims against one syndicate met the jurisdictional amount, the court should exercise supplemental jurisdiction over her claims against the other names. Instead, the court held that, because the claims against the names are "several," the "plaintiff must allege the amount in controversy exceeds $75,000 with respect to each Name to establish this Court's jurisdiction." *Id.* at *3. The court explained that the names were joined as co-defendants pursuant to Rule 20(a)(2)(A) of the Federal Rules of Civil Procedure because the claims against them were "several," so § 1367(b) expressly prohibited the court's exercise of supplemental jurisdiction. *Id.* at *3 n.9.

The same is true here. The Court cannot exercise supplemental jurisdiction over Ezell's claims against the other six syndicates merely because the jurisdictional threshold might be met as to the one syndicate, BRT 2987. Ezell must establish that the amount in controversy exceeds $75,000 with respect to each name. Because Ezell has failed to do so, the Court lacks subject-matter jurisdiction over this case.

### IV.  CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that defendant's motion to dismiss for lack of subject-matter jurisdiction (R. Doc. 6) is GRANTED, and Ezell's claims are DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that plaintiff's motion to enforce the Court's October 11, 2023 order (R. Doc. 21) is DENIED as MOOT.[18]

New Orleans, Louisiana, this 22nd day of November, 2023.

                                                                  BARRY W. ASHE
                                                                   UNITED STATES DISTRICT JUDGE

---

[18] *See supra* note 9.